**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERASMO ZAVALA ALMANZA and S.Z.H., | ) ) ) | |
| Petitioners, | ) ) | Civil Action No. 3:26-cv-720 |
| vs. | ) ) | Judge Stephanie L. Haines |
| LEONARD ODDO, *et al.*, | ) ) | |
| Respondents. | ) | |

## <u>OPINION</u>

On April 17, 2026, Petitioners Erasmo Zavala Almanza ("Zavala Almanza") and his granddaughter S.Z.H. ("Petitioners"), through counsel, filed a Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1) and a Motion for a Temporary Restraining Order ("TRO") (ECF No. 2) to stay Petitioner Zavala Almanza's removal and to maintain the status quo pending the resolution of the Petition.  On April 20, 2026, the Court issued a Case Management Order (ECF No. 3) and asked for clarification of the statute under which Petitioner Zavala Almanza was being detained by Immigration and Customs Enforcement ("ICE") (ECF No. 4).  That same day Petitioners filed a Supplement answering the Court's question (ECF No. 6).  The Court issued an Order granting the TRO (ECF No. 8) finding that Petitioner had met the requirement of Rule 65 and ordered Respondents not remove Zavala Almanza from the United States until further order of this Court.  The Court then set a briefing schedule.

Respondents filed their Response (ECF No. 9) on April 27, 2026, and Petitioners filed a Reply (ECF No. 10) on April 30, 2026, a hearing was set for May 13, 2026, and the TRO was extended until May 18, 2026 (ECF No 11).  In anticipation of the hearing, Petitioners filed a

Motion for Preliminary Injunction ("PI") (ECF No. 13) and supporting Brief (ECF No. 14). After the hearing was held on May 13, 2026, the Court extended the TRO one more time to June 1, 2026, to allow for full briefing of the PI (ECF No. 16). All briefing on the Petition was stayed pending the resolution of the PI (ECF No. 18). Respondents filed a Response in Opposition to the PI (ECF No. 19) and Petitioners filed a Reply (ECF No. 20). In their Brief in Support of PI and Reply (ECF Nos. 14, 20), Petitioners seek Zavala Almanza's release from the alleged illegal detention or in the alternative seek a bond hearing under 8 U.S.C. § 1226(a). They argue that the January 31, 2025, ICE Interim Guidance should be set aside as it applies to Zavala Almanza.[1] ECF No. 20. Respondents argue that the Court lacks the jurisdiction to provide the requested relief.[2] The issues presented in the briefing are ripe for disposition. For the following reasons, the Court **GRANTS** the PI Motion (ECF No. 13).

## I.    Factual Background[3]

Petitioner, Erasmo Zavala Almanza is a native citizen of Mexico, an illegal alien, and a legal guardian and caretaker of his one-year-old granddaughter S.Z.H. ECF No. 1, ¶¶ 1, 2, 5. In 2025, S.Z.H.'s father shot and killed her mother (Zavala Almanza's daughter), shot S.Z.H., and

---

[1] Petitioners have also asked the Court to compel ICE to adjudicate the pending I-246 Application for Stay of Removal. The Court lacks jurisdiction to provide this relief. Congress has "limited federal district courts' jurisdiction to review decisions or actions made pursuant to the sound discretion of DHS officials[.]" *Jane v. Rodriguez*, No. CV 20-5922 (ES), 2020 WL 10140953, at *1 (D.N.J. May 22, 2020). 8 U.S.C. § 1252(a)(1)(B)(ii) provides that "no court shall have jurisdiction to review any decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security...."

[2] "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged," not the "relief sought." *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020). This follows from the basic principle that a court's decision as to remedy "is, of course, different from [and subsequent to] the question [of] whether there is jurisdiction." *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 561 (1968). Section 1252(g) is a jurisdictional bar, not a remedial limitation. *Cf. Biden v. Texas*, 597 U.S. 785, 798 (2022) (discussing section 1252(f)). And in any event, the Court has broad discretion to ensure that any relief given is proper. *Rosario-Torres v. Hernandez-Colon*, 889 F.2d 314, 321 (1st Cir. 1989). *Oliveira v. Edlow*, No. CV 25-13228-BEM, 2025 WL 3492110, at *10 (D. Mass. Dec. 4, 2025)

[3] The facts are derived from Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), Memorandum of Law in Support of Motion for Preliminary Injunction (ECF No. 14), and Petitioner's Reply in support of Preliminary Injunction (ECF No. 20). The facts are undisputed unless otherwise noted.

then the shooter killed himself. ECF No. 1, ¶ 3. S.Z.H. was shot in the stomach but survived the shooting, ECF No. 1, ¶¶ 3-4, and now is under the care of her grandparents, who have legal guardianship. ECF No. 1, ¶ 5. After the murder of his daughter, and after assisting the government with the investigation of the murder, on January 8, 2026, Zavala Almanza and his wife filed petitions for U nonimmigrant status ("U-Visa") with the United States Citizenship and Immigration Service ("USCIS"). This application is based on their status as indirect victims and cooperating police witnesses of criminal activity. ECF Nos. 1, ¶ 6; ECF No. 1-7.

ICE initially became aware of Zavala Almanza's illegal presence in the United States in September 2009 during a traffic stop. Zavala Almanza was served with a notice to appear and was placed into removal proceedings. ECF No. 14, p. 4. On August 17, 2010, an Immigration Judge granted Zavala Almanza's request for voluntary departure in lieu of removal, with a deadline of December 15, 2010, on which to depart. ECF No. 14, p. 4. If Zavala Almanza failed to depart the United States by that date an alternate order of final removal to Mexico would be entered. Zavala Almanza, by his own admission in his I-918 Petition for U Nonimmigrant Status, disclosed that he did not depart the United States timely, but did depart the United States, and then returned in late 2015, early 2016. ECF Nos. 14, p. 4; 10-1; 14-1 ("Declaration").

In any event, on April 15, 2026, Zavala Almanza was taken into ICE custody. ECF No. 14, p. 5. Respondents state that Zavala Almanza was taken into custody based on a permanent order of removal that took effect in December 2010. ECF No. 19, p. 15. Respondents state that no proof of departure was provided by Zavala Almanza, thus his detention is being processed as a final order of removal for lack of proof of compliance with the voluntary departure ordered in 2010. ECF No. 9-1. Respondents argue in their Response to the Motion for PI (ECF No. 19), that Petitioners proof of departure in the forms of a self-serving affidavit and a single medical record from Mexico are weak and not reliable proof of departure. ECF No. 19, p. 18. Petitioners address

3

Respondents' concern in their Reply (ECF No. 20) providing multiple sworn detailed declarations from family members and a Mexican elected official stating that Zavala Almanza did indeed return to Mexico. Petitioners also provided a voter identification card that establishes Zavala Almanza's presence in Mexico in 2014. ECF No. 20, p. 5. Petitioners argue that the 2010 Order of removal was fully executed because Zavala Almanza's departed the United States, albeit late.

Most recently, the Court learned that Zavala Almanza was granted expedited review of his U-Visa application and was issued a positive bona fide determination ("BFD"), granting him deferred action under 8 C.F.R. § 274a.12(c)(14), and employment authorization through May 14, 2030. ECF No. 20, p. 1; ECF Nos. 19-1, 19-2, 20-1. Both Parties state that this development moots several issues raised in the Motion for TRO/PI. But despite Zavala Almanza's new status, he continues to be detained at Moshannon Valley Processing Center ("MVPC") and has remained detained since early April. Petitioners' remaining argument in the PI is that Zavala Almanza is illegally detained in violation of his due process rights under statutory law and should be released. Respondents stand firm on their position that Zavala Almanza is properly detained under a final order of removal and as such the 2025 Executive Order provides guidance to support his removal.

## II.    Jurisdiction

Habeas relief may be extended to a detainee when "[h]e is in custody in violation of the Constitution or laws … of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws … of the United States." *Id.*; *see Maleng v. Cook*, 490 U.S. 488, 490 (1989).

Here, Petitioners argue only Zavala Almanza's unlawful detention, not the execution of a removal order. ECF No. 14, p. 7; ECF No. 20, p. 11. Specifically, with the PI Motion, Petitioners

4

challenge the constitutionality of Zavala Almanza's continued detention. *See id.* Because Zavala Almanza is currently detained within the Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates his Fifth Amendment rights to due process, this Court has jurisdiction over Petitioners' claims. *Cf. Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

## III.    Preliminary Injunction Standard

Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). A party seeking to obtain such relief must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.*

Failure to satisfy the first factor of the analysis—a likelihood of success on the merits— necessitates denial of the injunctive request. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)). It follows that district courts need not address the other factors if the moving party fails to establish the first factor. *See Marvin R.V. v. Tsoukaris*, No. 20-CV-5225, 2020 WL 6689760, at *5 n.2 (D.N.J. Nov. 13, 2020) (collecting Third Circuit cases to support the statement that "[because the p]etitioner has failed to meet his burden with respect to the likelihood of success on the merits, the Court need not address the remaining factors"); *see also Peter v. Att'y Gen. of New Jersey*, No. 23-CV-3337, 2023 WL 4627866, at *1 (D.N.J. July 19, 2023).

## IV.    Analysis

## 1. Statutory Authority and Due Process

There is no dispute that Zavala Almanza entered the United States illegally. In September of 2009, after ICE initially processed Petitioner as an inadmissible arriving alien, ICE then provided Petitioner with a Notice to Appear and he was placed into removal proceedings and was provided the opportunity to voluntarily depart from the United States. It is admitted by Zavala Almanza that he didn't depart timely as ordered (i.e., by the deadline of December 15, 2010), but that he did depart and he provides various forms of sworn proof of his departure from the United States. The Court makes special note that Zavala Almanza made a sworn statement against his own interest when filing his application for his U-Visa. He declared he departed in violation of a court's order; the Court views this admission as supportive of its credibility, especially in light of the other supportive evidence now of record.

The Court asked Respondents to provide any supportive evidence that Zavala Almanza did not self-deport and that the final order of removal remains unexecuted. *See* ECF No. 16, p. 3. Respondents side-stepped the Court's request by stating that it was not their burden to provide such evidence. Given Respondents silence on the issue of evidence that Zavala Almanza did not depart and given the multitude of support that he did, the Court finds Petitioners have met their burden of proof that Zavala Almanza returned to Mexico after he was ordered removed, thereby executing his removal order of December 2010.

Given that there is currently no final order of removal, the Court agrees with Petitioners that Zavala Almanza is currently detained under no statutory authority, and as such his detention is without due process and illegal. "The Fifth Amendment prohibits civil detention without 'special justification.'" *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Respondents must either reinstate the former removal order, forgo it, or begin new proceedings should they want to

effectuate the removal of Zavala Almanza. ECF No. 14, pp. 8-9. The Court finds that Petitioner has shown a likelihood of success on the merits of his due process claim.

### 2. U-Visa Status[4]

Respondents first argued that the Court could not review detention in anticipation of removal proceedings – even with pending U-Visa applications – under Section 1252(g) because such considerations are bound up in removal proceedings. ECF No. 9, p. 5. However, any arguments presented to this Court regarding the Court's authority to review Zavala Almanza's detention while there is a pending BFD and U-Visa application are now moot given that Zavala Almanza was granted expedited review of his U-Visa application and was issued a positive BFD granting him deferred action under 8 C.F.R. § 274a.12(c)(14), and employment authorization through May 14, 2030. After the issuance of the favorable BFD, Petitioners properly submitted a request for stay of removal to the relevant ICE Field Office in Philadelphia and that request remains pending and is not for the consideration by this Court. ECF No. 20, p. 2; ECF No. 19, p. 3.

In the meanwhile, Zavala Almanza remains detained because Respondents state that he continues to be lawfully detained as removable under the 2025 ICE Guidance and that U-Visa protections he may be afforded are discretionary to the Department of Homeland Security ("DHS"). Respondents also state that this Court lacks jurisdiction to consider these issues because 8 U.S.C. § 1252(g) and (b)(9) bar any injunction concerning ICE's consideration of a stay of

---

[4] In 2000, Congress enacted the Victims of Trafficking and Violence Protection Act ("VTVPA") to strengthen ability of law enforcement agencies to detect, investigate, and prosecute criminal activity against non-citizens. ECF No. 1, ¶¶ 46-53. Congress authorized DHS to waive virtually any ground of inadmissibility to U-Visa petitioners in public interest. VTVPA, Pub. L. No. 106-386, § 1513(e), 114 Stat. 1464, 1533 (2000); 8 U.S.C. § 1182(d)(14). Within this scheme a Bona Fide Determination ("BFD") process must be conducted. First the USCIS determines whether the petition is bona fide and then USCIS determines whether it merits a favorable exercise of discretion. A favorable decision culminates in the granting of a BFD Employment Authorization Document ("BFD EAD"); this also is a granting of deferred action for the period of the BFD EAD; in this case through May 14, 2030.

removal. ECF No. 19, p. 6. Petitioners counter that the Administrative Procedure Act ("APA") raises a question of lawfulness of the 2025 Interim ICE guidance and Petitioners' habeas claim challenges unlawful detention, not the execution of removal order. ECF No. 20, pp. 3-4. Petitioners state that now that Zavala Almanza holds deferred action based on his BFD, his continued detention is unlawful as ICE cannot nullify a status the USCIS has affirmatively granted. ECF No. 20, p. 4. Petitioners cite to *Immigr. Ctr. for Women & Child. v. Noem*, No. 2:25-CV-09848-AB-AS, 2026 WL 1455004, at *2 (C.D. Cal. May 20, 2026) (staying the 2025 Guidance as it applied to plaintiffs and to the extent it overrides plain congressional intent.); *Oliveira v. Edlow*, No. CV 25-13228-BEM, 2025 WL 3492110, at *13 (D. Mass. Dec. 4, 2025) ("Plaintiffs' motion for preliminary injunction is granted. Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, the Court hereby preliminarily enjoins Defendants, their agents, and anyone acting in concert or participation with Defendants from implementing, instituting, maintaining, or giving effect to the 2025 Policy, including its rescission of the 2021 Policy, in any form with respect to Plaintiffs until further order issued by this Court.").

As stated, this Court found that Zavala Almanza is not currently in removal proceedings and, therefore, Section 1252's bar does not apply. It states, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases or execute removal orders against any alien." Likewise, Respondents argument that 8 U.S.C. § 1252(b)(9) bars this Court's jurisdiction is not applicable. Respondents cite, "The statute is 'directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion' and 'seems clearly designed to give some measure of protection to "no deferred action" decisions and similar discretionary determinations.'" ECF No. 19, p. 7 (citing *Reno v. American-Arab Anti-Discrimination Comm.*,

8

525 U.S. 471, 485, n.9 (1999). This Court is not reviewing the DHS's process toward Zavala Almanza's final order of removal, nor is it impeding on DHS discretion, instead it is considering whether Zavala Almanza is lawfully detained under statute and given his U-Visa status. This Court has found that Zavala Almanza is not being held under any legal statutory framework. In addition, this Court finds that Zavala Almanza's designation under his U-Visa is "wholly collateral" to his removal proceedings and thus this Court has jurisdiction to review whether he may benefit from deferred action in his immigration case. The Court finds that Petitioner has shown a likelihood of success on the merits of his deferred action claim.

### 3.  2025 ICE Policy Guidance

On January 30, 2025, the "Interim Guidance on Civil Immigration Enforcement Actions Involving Current and Potential Beneficiaries of Victim-Based Immigration Benefits" ("2025 Interim Guidance") replaced the guidance issued in 2021. ECF No. 19, p. 5. It changed the "Victim-Centered" approach that was used in the 2021 Guidance. The 2021 Guidance directive was that non-citizens with pending U-Visa applications "should generally be issued a stay of removal" except where a BFD has been denied or in "exceptional circumstances," and that U-Visa applicant status should be considered a positive factor in release and enforcement decisions. ECF No. 19, p. 6; ECF No. 14-3, Section 2, 5.4(a). The 2025 Interim Guidance articulates a policy of "'total and efficient enforcement' ... against all inadmissible and removable aliens." ECF No. 14-2, p. 2. The 2025 Interim Guidance no longer favors a presumptive policy of disfavoring the removal of U-Visa petitioners and a "blind removal policy" has been implemented.

Petitioners ask the Court to set aside the 2025 Interim Guidance as it applies to Zavala Almanza stating that under the APA courts "shall...hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

ECF No. 14, p. 14 (citing 5 U.S.C. § 706(2)(A); *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 16 (2020); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 106 (2015). Respondents first argue that DHS has discretion to grant stays of removal under both the 2021 Guidance and under the 2025 Interim Guidance so that setting aside the 2025 Interim Guidance as it pertains to Zavala Almanza will not provide the relief Petitioners seek as it still gives DHS discretion to carry out its directives. ECF No. 19, p. 9. The Court reiterates it distinction between DHS's discretion to carry out removal orders and the Court's jurisdiction to review violations of due process.

Respondents also argue that the 2025 Interim Guidance is not subject to APA review because it is not a final agency action and in any event is not arbitrary and capricious. Respondents state that for agency action to be "final" it generally "must be one by which rights or obligations have been determined, or from which legal consequences will flow" and also "must mark the consummation of the agency's decision-making process – it must not be of merely tentative or interlocutory nature." ECF No. 19, p. 10 (citing U.*S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Respondents state that the 2025 Interim Guidance merely provides guidance for ICE's discretion when issuing stays of removal. Petitioners retort that the APA permits "judicial review" of "final agency action for which there is no other adequate remedy in a court." ECF No. 14, p. 15 (citing 5 U.S.C. § 704). They state there is no other adequate remedy because "' [n]o statute authorizes judicial review' of policies like the 2025 Policy in another tribunal." ECF No. 14, p. 15 (*citing Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313, 1315 (9th Cir. 2010)).

This Court takes direction from *Oliveira v. Edlow*, No. CV 25-13228-BEM, 2025 WL 3492110, at *2 (D. Mass. Dec. 4, 2025) and *Immigr. Ctr. for Women & Child. v. Noem*, No. 2:25-CV-09848-AB-AS, 2026 WL 1455004, at *3 (C.D. Cal. May 20, 2026).[5]

> For purposes of this preliminary injunction, the Court is satisfied that Plaintiffs will be able to show that the 2025 Policy constitutes final agency action. As to the first *Bennett* prong, the 2025 Policy represents the straightforward execution of a clearly articulated policy: on January 20, 2025, President Trump ordered that DHS "rescind [certain] policy decisions of the previous administration." On January 30, 2025, DHS did so. Granted that the 2025 Policy itself purports to be only "interim guidance" that "may be modified, rescinded, or superseded at any time." However, an agency cannot exempt itself from APA review merely by labeling its policy interim "[g]uidance." *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1020–23 (D.C. Cir. 2000). "The fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment." *Id.* at 1022. For the same reason, "boilerplate" disclaimers are non-dispositive. *Id.* at 1022–23. Here, in the absence of any indication that Defendants' position on this issue is "tentative" or otherwise evolving, *cf. Harper*, 118 F.4th at 116, the Court finds it likely that the 2025 Policy constitutes DHS's final word on the matter (at least for now).

*Oliveira*, 2025 WL 3492110, at *9. This Court absolutely agrees that the 2025 Interim Guidance cannot state it is only interim and may be altered in the future to exempt it from judicial review while it unequivocally affects rights and legal consequences of individuals.

As to whether it is arbitrary and capricious, the Court in *Oliveira* states,

> [T]he VTVPA (including the availability of interim relief) is part of our immigration laws. It is thus unclear how its implementation could ever be at odds with DHS's purported goal. Moreover, neither the announcement, nor the Executive Order it cites, gives any indication that DHS has considered how its new policy will impact the VTVPA's law-enforcement and humanitarian aims, let alone the "serious reliance interests" with which all agencies are required to reckon. *Id.* at 30 (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 212 (2016)).

*Oliveira* at *2.

---

[5] This Court acknowledges that these cases are not binding on this Court and review of caselaw finds that this is a matter of first impression for the Third Circuit.

11

> Here, the record currently before the Court indicates that DHS "entirely failed to consider an important aspect of the problem," *see State Farm*, 463 U.S. at 43, indeed one that was specifically and explicitly addressed by Congress through the VTVPA and subsequent legislation—that "women and children who are victims of [violent and sexual] crimes committed against them in the United States must be able to report these crimes to law enforcement and fully participate in the investigation of the crimes committed against them and the prosecution of the perpetrators of such crimes." Nowhere does DHS seem to recognize, let alone address, that withdrawing protections might chill non-citizen cooperation and "[weaken] the ability of law enforcement." Indeed, DHS seems unaware of the fact that its actions are plainly in tension, following Congress's logic, with the President's expressed concern for "national security and public safety."

*Oliveira* at \*10.  Given the unanswered questions and the undermining of the statutory intent of the VTVPA being unaddressed, the Court can make a finding of arbitrary and capricious even if the 2025 Interim Guidance puts forth its own goals as Respondents assert.

> In sum, Plaintiffs challenge DHS's issuance of the 2025 Policy and, by extension, its rescission of the 2021 Policy. These are not "decision[s] or action[s] ... to execute removal orders." *Cf.* 8 U.S.C. § 1252(g). And while Plaintiffs' APA framing certainly impacts what relief is available, it does not foreclose the Court's ability to prevent irreparable harm in this case.

*Oliveira* at \*9.  Therefore, the Court enjoins Respondents from implementing, maintaining, or giving effect to the 2025 Interim Guidance, including its rescission of the 2021 Policy, as it applies to Zavala Almanza.

## V.    Conclusion

The Court finds that Petitioners have satisfied the prongs to support injunctive relief.  First, Petitioners have shown a likelihood of success on the merits.  The Court finds they have satisfied the burden of proof that Zavala Almanza departed the country, thus, executing a final order of removal.  His eventual illegal re-entry has not been put into removal proceedings by Respondents.  Second, Petitioners have suffered irreparable harm and will continue to suffer irreparable harm if

the injunction is denied.  S.H.Z. is without a primary caretaker and Zavala Alamanza has suffered irreparable harm in his unlawful detention since April 15, 2026.  "In the immigration context, unlawful detention is a sufficient irreparable injury."  *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 46 (M.D. Pa. 2025) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017) (finding that immigration detention can constitute irreparable harm "by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time" and emphasizing harm related to economic burdens due to missed work and the harm that results when children cannot see their detained parents).  Third, granting preliminary relief will not result in even greater harm to the nonmoving party as there is no bar against Respondents properly reopening removal proceedings and adjudicating through the proper channels with the proper considerations.  Fourth, that the public interest favors such relief in as much as the tenets supported by this Court's decision were contemplated by Congress when it wrote into law protections for illegal aliens who assist the United States with investigation and prosecution of violent crimes.  This Court finds the public interest in this effort is weightier than the deportation of an illegal immigrant who as committed no violent crime but has assisted in the investigation of one.

For the foregoing reasons, the Court **GRANTS** Petitioner's Motion for a Preliminary Injunction (ECF No. 13) and **Petitioner Zavala Almanza shall be immediately released from detention**.  Given that the same relief was sought in the Petition for Writ of Habeas Corpus (ECF No. 1), the Court likewise **GRANTS** the Petition.  An appropriate Order follows.

DATED: May 29, 2026

STEPHANIE L. HAINES
U.S. DISTRICT COURT JUDGE